1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROB SANDS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AT&T INC., a foreign corporation doing business in Washington State<br><br>Defendant. | Case No. 2:24-cv-821<br><br>(Removal from the Superior Court of the State of Washington, King County, Case # 24-2-09591-8 SEA)<br><br>NOTICE OF REMOVAL |

Pursuant to 28 U.S.C. §§ 1332 and 1441(a), and with reservation of all defenses and rights, AT&T Inc. ("AT&T") removes this action from the King County Superior Court of Washington to the U.S. District Court for the Western District of Washington, Seattle Division. The grounds for removal follow.

## I.  Nature and description of case

### A.    The present case arises from AT&T's March 30, 2024 announcement.

1.      On March 30, 2024, AT&T announced that AT&T-specific data fields were contained in a data set released online approximately two weeks before. AT&T shared its determination with regulators and the public, took precautionary measures, and began notifying customers. As of June 6, 2024, at least 58 related

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

putative class actions have been filed against AT&T in 11 federal district courts in 7 states in connection with the incident, as well as actions filed in state court in California and Florida (among others). The putative class plaintiffs in each action purport to represent all individuals whose information was allegedly impacted by the incident, and allege AT&T failed to safeguard personal information in violation of common law, contracts, and consumer protection statutes.

2.     On April 2, 2024, one of the plaintiffs bringing a consumer action against AT&T moved the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate pending federal court actions in multidistrict litigation ("MDL") in the Northern District of Texas. *See In re AT&T Inc. Customer Data Security Breach Litigation*, JPML No. 3114, ECF No. 1 (Apr. 2, 2024). The JPML heard argument on the motion to consolidate on May 30, 2024, and ordered the case consolidated into multidistrict litigation in the Northern District of Texas on June 5, 2024. *See id.*, ECF No. 139 (June 5, 2024). The JPML reasoned that "[t]hese putative class actions present common factual questions concerning an alleged data security breach announced by AT&T in March 2024 concerning the personal information of over 70 million former and current AT&T customers released on the dark web." *Id.* at 1.

3.     On April 30, 2024, Plaintiff Rob Sands ("Sands") filed a Class Action Complaint against AT&T in the Superior Court of the State of Washington, King County. *See* Ex. A ("Compl."). Sands alleges five causes of action, including negligence and breach of implied contract, arising from the same incident that is the subject of the putative class actions already pending across the country and consolidated in MDL proceedings. Sands seeks to certify a class of "[a]ll individuals residing in Washington whose Private Information was compromised in the Data Breach disclosed by AT&T in March 2024." Compl. ¶ 102.

---

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

4.      On May 21, 2024, AT&T informed Sands's counsel that it was willing to accept service of the Complaint as of that date.[1] *See* Ex. F. As required by Local Civil Rule 101(b), a true and correct copy of Plaintiff's Complaint and Summons are attached as Exhibits A and B, respectively.

5.      All records and proceedings in the state court are attached hereto as Exhibits A through F. To the best of AT&T's knowledge and belief, no further pleadings, process, orders, or other documents have been filed, served, or issued in this case to date. No responsive pleading has been filed by AT&T. A copy of the state court docket sheet, as of May 30, 2024, is attached hereto as Exhibit G.

6.      As discussed in more detail below, this state court action is properly removed to this Court pursuant to 28 U.S.C. § 1441, because AT&T has satisfied the procedural requirements for removal.

7.      This case is removable pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act ("CAFA") jurisdiction) because there is minimal diversity of citizenship, the amount in controversy exceeds $5 million, and there are over 100 proposed plaintiff class members. This case is also removable pursuant to 28 U.S.C. § 1332(a) because the case satisfies the diversity jurisdiction requirements.

## II.  Jurisdiction and basis for removal

### A. Removal to this Court is timely and proper.

8.      Sands filed his complaint on April 30, 2024, and AT&T accepted service of the summons and complaint on May 21, 2024. AT&T timely removed this action within 30 days of their acceptance of service. 28 U.S.C. § 1446(b). *See also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (noting that the time period for removal begins when the defendant is served).

---

[1] Sands previously served a party not authorized to accept service on behalf of AT&T. *See* Ex. E.

NOTICE OF REMOVAL - 3

9. No previous notice of removal of the underlying trial court matter has been filed.

10. AT&T is contemporaneously serving a copy of this Notice of Removal upon Sands, and is filing a copy of this Notice of Removal in the King County Superior Court of Washington pursuant to 28 U.S.C. § 1446(d).

11. Removal to this Court is proper under 28 U.S.C. § 1441(a) because the court from which this action was removed, King County Superior Court of Washington, is within the jurisdiction of the U.S. District Court for the Western District of Washington, Seattle Division. Thus, this Court "embrac[es] the place where such action is pending." 28 U.S.C. § 1441(a).

**B. This Court has original jurisdiction under CAFA.**

12. Sands filed this case as a putative class action under Washington Civil Rule 23(a) and (b)(3), which authorizes actions brought by one or more representative persons and which is substantially similar to Rule 23 of the Federal Rules of Civil Procedure. *See* Compl. ¶ 102. Thus, the complaint constitutes a class action under CAFA. 28 U.S.C. § 1332(d)(1)(B).

13. This Court has original jurisdiction over the complaint under CAFA because there is a reasonable probability that this action: (i) involves a minimal diversity of citizenship among the parties; (ii) involves, in the aggregate, an amount in controversy exceeding $5 million; and (iii) includes over 100 proposed plaintiff class members. *See* 28 U.S.C. § 1332(d).

**i. Minimal diversity of citizenship exists.**

14. Federal courts have jurisdiction under CAFA if any putative class member is a citizen of a state different from any defendant "at the time of removal." 28 U.S.C. § 1332(d)(2)(A); *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1063 (9th Cir. 2019); *Bush v. Cheaptickets, Inc.,* 425 F.3d 683, 684 (9th Cir. 2005).

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

15.     Here, minimal diversity exists because Sands alleges he is a resident of the State of Washington, Compl. ¶ 24, and AT&T is a corporation organized under the laws of Delaware with its principal place of business in Texas, *see id.* ¶ 25.

16.     For purposes of diversity jurisdiction, an individual is deemed a citizen of the state where he or she is domiciled. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). Sands is a citizen of Washington state.

17.     For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Thus, AT&T is a citizen of Delaware and Texas, not Washington.

18.     Further, because the JPML has consolidated related matters into an MDL, Sands's suit is subsumed into cases subject to consolidation. *See, e.g.*, *In re Kitec Plumbing Sys. Prods. Liab. Litig.*, 2010 WL 11618052, at *6 (N.D. Tex. Aug. 23, 2010) (courts may look past the manner in which plaintiffs limit their putative classes where plaintiffs "are already properly before [the MDL] Court"); *see also Simon v. Marriott Int'l, Inc.*, 2019 WL 4573415, at *4 (D. Md. Sept. 20, 2019) (similar); *Sanders v. Kia Am. Inc.*, 2023 WL 3974966, at *4–5 (C.D. Cal. June 13, 2023) (similar).

19.     For example, the lead case before the JPML, *Petroski v. AT&T Inc.*, Case No. 3:24-cv-00757 (N.D. Tx.), alleges a putative class of "[a]ll individuals residing in the United States whose PII was accessed and/or acquired by an unauthorized party as a result of the data breach at Defendant in or about March 2024." *Id.*, ECF No. 1, ¶ 140. That case—and multiple others with the same or similar class definitions and underlying allegations—are now consolidated in an MDL before Judge Ada Brown of the Northern District of Texas. Consequently, Mr. Sands and his allegations are already subsumed within earlier filed federal cases pending in the MDL.

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

1

### ii. The CAFA amount in controversy is satisfied.

2        20.    Sands's complaint also meets CAFA's second requirement that the

3    amount in controversy exceed $5 million. *See* 28 U.S.C. § 1332(d)(2).

4        21.    Courts "generally evaluate jurisdictional facts, such as the amount in

5    controversy, on the basis of the pleadings, viewed at the time when defendant files

6    the notice of removal." *Blockbuster Inc. v. Galeno*, 472 F.3d 53, 56–57 (2d Cir. 2006).

7    Where, as here, the complaint fails to allege a specific damages amount, courts may

8    rely on allegations in the notice of removal. *See Mehlenbacher v. Akzo Nobel Salt,*

9    *Inc.*, 216 F.3d 291, 296 (2d Cir. 2000) (courts "look first to the plaintiffs' complaint

10   and then to [the defendant's] petition for removal" in determining jurisdiction). In

11   measuring the amount in controversy, the court must assume the allegations in the

12   complaint are true and inquire as to the amount put into controversy by the

13   plaintiff, not by what the defendant may ultimately owe. *See, e.g.*, *Kenneth*

14   *Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D.

15   Cal. 2002); *Rippee v. Boston Market Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal.

16   2005).

17       22.    "[A] defendant's notice of removal need include only a plausible

18   allegation that the amount in controversy exceeds the jurisdictional threshold."

19   *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Indeed,

20   "when a defendant seeks federal-court adjudication, the defendant's amount-in-

21   controversy allegation should be accepted when not contested by the plaintiff or

22   questioned by the court." *Id.* at 87.

23       23.    Sands seeks an array of monetary and injunctive relief, including

24   compensatory, statutory, treble, nominal, and punitive damages; restitution and

25   disgorgement; attorneys' fees, costs and expenses; prejudgment and post-judgment

26   interest; and any other relief the "Court may deem just and proper" for a putative

27

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

1   class of potentially millions (and admittedly at least "thousands") of individuals. *See*

2   Compl. ¶ 106 & Prayer for Relief.

3        24.    Sands's request for disgorgement and restitution alone is enough to

4   satisfy the amount-in-controversy requirement. *Id.* ¶ 181 ("Defendant should be

5   compelled to disgorge into a common fund—for the benefit of Plaintiff and Class

6   Members—all unlawful or inequitable proceeds that it received because of its

7   misconduct."), *id.* ¶ 192 (seeking restitution).

8        25.    Sands further seeks treble damages "not to exceed $25,000 per Class

9   Member." *Id.* ¶ 193. Where a statutory maximum is specified, courts may consider

10  the maximum statutory penalty available in determining whether the jurisdictional

11  amount in controversy requirement is met. *Chabner v. United of Omaha Life Ins.*

12  *Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (citing *Galt G/S v. JSS Scandinavia*,

13  142 F.3d 1150, 1156 (9th Cir. 1998)). Here, just 200 class members receiving the

14  statutory maximum treble damages would satisfy the amount in controversy

15  requirement.

16       26.    Sands also seeks a 17-point order for injunctive relief that would have

17  the Court superintend AT&T's information security procedures for a decade and

18  would require AT&T, among other things, to, "engage independent third-party

19  security auditors/penetration testers" to run tests and audits on AT&T's systems,

20  *see* Compl. Prayer for Relief, ¶ C(vi); "establish an information security training

21  program," *id.* ¶ C(xi); and "[f]or a period of 10 years, appoint[] a qualified and

22  independent third-party assessor to conduct a SOC 2 Type 2 attestation on an

23  annual basis to evaluate Defendant's compliance with the terms of the Court's final

24  judgment, to provide such report to the Court and to counsel for the Class, and to

25  report any deficiencies with compliance of the Court's final judgment," *id.* ¶ C(xvii).

26  The cost of this decade-long injunctive endeavor is properly considered part of the

27

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

1  jurisdictional amount in controversy. *See, e.g., Int'l Padi, Inc. v. Diverlink,* 2005 WL
2  1635347, at *1 (9th Cir. July 13, 2005).

3     27.    Although AT&T does not concede that Sands will ultimately be able to
4  establish any damages or entitlement to injunctive relief, CAFA's $5 million
5  threshold is met based on the allegations and requests for relief in the Complaint.[2]

6     28.    Thus, there is a reasonable probability that the amount-in-controversy
7  element is satisfied in this case for purposes of CAFA jurisdiction, and solely for
8  that purpose.

9        **iii.  Sands alleges a putative class exceeding 100 members.**

10    29.    Sands's complaint also satisfies CAFA's numerosity requirement
11 because there is a reasonable likelihood the putative class includes more than 100
12 members.

13    30.    Sands expressly alleges that "[t]he proposed Class consists of
14 thousands of members—far too many to join in a single action." Compl. ¶ 106.

15    31.    Thus, the final jurisdictional requirement under CAFA is met.

16 **C. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a).**

17    32.    This action is also removable because 28 U.S.C. § 1332(a)'s
18 requirements for diversity jurisdiction are met. Sands alleges he is a citizen of, and
19 domiciled in, the State of Washington, *see* Compl. ¶ 24, and AT&T is a citizen of the
20 States of Texas and Delaware, not Washington, *see id.* ¶ 25; 28 U.S.C. § 1332(c)(1).

21    33.    Although AT&T denies Sands's allegations—and fully reserves its
22 rights to contest their adequacy—the value of Sands's claims meet the $75,000

23 ─────────────────────
24 [2] By removing this action to this Court, AT&T does not concede that it has any
   liability, let alone liability greater than $5,000,000, to the members of the putative
25 class. *See, e.g., Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 449 (7th Cir.
   2005) ("[The defendant] did not have to confess liability in order to show that the
26 controversy exceeds the threshold."); *see also Moda v. Priceline.com, Inc.,* 2006 WL
   3327871, at *1 (9th Cir. 2006) (same). Instead, "[t]he amount in controversy is
27 simply an estimate of the total amount in dispute, not a prospective assessment of
   defendant's liability." *Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir.
   2010) (citing cases).

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

1  amount-in-controversy requirement of 28 U.S.C. § 1332(a) for the same reasons that

2  CAFA's amount-in-controversy is satisfied. Sands's request for compensatory relief,

3  sweeping injunctive relief—including a 10-year monitoring and compliance period—

4  and trebled damages up to $25,000, plus the attorneys' fees and other relief sought,

5  easily exceed § 1332(a)'s requirements. Accordingly, this action is removable.

6  ### III. Notice

7      34.    Pursuant to 28 U.S.C. § 1446(d), AT&T will give written notice of the

8  filing of this Notice of Removal to all parties of record in this action and will file a

9  copy of this Notice of Removal with the clerk of the state court.

10 ### IV. Reservation of rights and denial of liability

11     35.    Nothing in this Notice is intended or should be construed as an express

12 or implied admission by AT&T of any fact alleged by Sands, of the validity or merit

13 of any of Sands's claims and allegations, or as a limitation of any of Sands's rights,

14 claims, remedies, or defenses in connection with this action.

15 ### V. Exhibits to Notice of Removal

16     36.    Pursuant to Local Civil Rule 101(b)–(c), AT&T verifies that the

17 following Exhibits filed herewith are true and correct copies of all records and

18 pleadings filed in the state court proceeding to date:

19     a.   Complaint (attached as **Exhibit A**):

20     b.   Summons (attached as **Exhibit B**);

21     c.   Case Information Cover Sheet (attached as **Exhibit C**);

22     d.   Order Setting Original Case Schedule (attached as **Exhibit D)**;

23     e.   Declaration of Service (attached as **Exhibit E**);

24     f.   Acceptance of Service (attached as **Exhibit F**).

25     g.   Court Docket Sheet (attached as **Exhibit G**).

26

27

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

## V.  Conclusion

AT&T hereby removes this action to this Court. This Court has jurisdiction over this action under both CAFA and traditional diversity jurisdiction, and this action should be entered on the docket for further proceedings as though it had originally been filed in this Court.

DATED June 10, 2024.

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*s/ Alexander Vitruk*
Alexander Vitruk, WSBA No. 57337
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Tel: 206.332.1380
Fax: 206.624.7317
Email: avitruk@bakerlaw.com

*Attorneys for Defendant AT&T, Inc.*

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that a true and correct copy of the foregoing document was

3    served via email and U.S. mail upon the following:

4    Timothy W. Emery, WSBA #34078           ☐ Via Messenger
5    Patrick B. Reddy, WSBA #34092            ☐ Via Fax
     Brook E. Garberding, WSBA #37140         ☒ Via U.S. Mail Posted June 11, 2024
6    Paul Cipriani, WSBA #59991               ☐ Via ECF Notification
7    **EMERY REDDY, PLLC**                    ☒ Via Email
     600 Stewart Street, Suite 1100           ☐ Via Overnight Delivery
8    Seattle, WA 98101-1269
9    Tel: (206) 442-9106
     Fax: (206) 441-9711
10   Email: emeryt@emeryreddy.com;
     reddyp@emeryreddy.com;
11   brook@emeryreddy.com;
     paul@emeryreddy.com
12

13          DATED June 10, 2024, at Seattle, Washington.

14                                 _s/Pandy McVay_____

15

16

17

18

19

20

21

22

23

24

25

26

27

NOTICE OF REMOVAL - 11

# EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ROB SANDS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| AT&T, INC., a foreign corporation doing business in Washington State | |
| Defendant. | |

Plaintiff Rob Sands ("Plaintiff") individually and on behalf of all others similarly situated (the "Class Members"), by and through counsel, brings this Class Action Complaint against Defendant AT&T, Inc .("AT&T" or "Defendant") and alleges, upon personal knowledge as to his own actions and counsel's investigation, and upon information and belief as to all other matters, as follows:

## I.    INTRODUCTION

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard personally identifiable information including, but not limited to, full names, phone numbers, Social Security numbers, addresses, dates of birth ("PII"),[1] and other sensitive personal

---

[1] PII generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not, on its face, name an individual, but that are considered to be particularly sensitive and/or valuable if the

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

and financial information including, but not limited to, data usage and location identifiers, AT&T account numbers and passcodes, and credit card and other payment information (collectively with "PII" as "Private Information").

2.     Defendant is an international telecommunications company that provides more than 100 million U.S. consumers with communications experiences across mobile and broadband.

3.     To provide these services, and in the ordinary course of AT&T's business, Defendant acquires, possesses, analyzes, and otherwise utilizes Plaintiff and Class Members' Private Information, which Plaintiff and Class Members were required to provide Defendant in order to obtain or utilize communication services from Defendant.

4.     With this action, Plaintiff seeks to hold Defendant responsible for the harm it caused, and will continue to cause, Plaintiff and at least 7.6 million current customers and 65.4 million former account holders.[2]

5.     Plaintiff further seeks to hold Defendant responsible for the massive and preventable cyberattack purportedly discovered by Defendant, by which cybercriminals infiltrated Defendant's inadequately protected network servers and accessed and exfiltrated highly sensitive Private Information belonging to Plaintiff and Class Members which was being kept unprotected (the "Data Breach").

6.     Plaintiff further seeks to hold Defendant responsible for not ensuring that Defendant maintained the Private Information in a manner consistent with industry standards.

7.     On or about March 30, 2024, AT&T informed many Class Members by email and mail notice that their sensitive Personal Information had been compromised (the "Notice Letter").[3]

---

wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

[2] *Id.*; *see also AT&T Forced to Reset Millions of Account Passcodes After Hacked Data Spreads Online*, Inc.com, April 1, 2024, https://www.inc.com/kit-eaton/att-forced-to-reset-millions-of-account-passcodes-after-hacked-data-spreads-online.html.

[3] *See attached* copy of data breach communication / letter attached as **Exhibit 1.**

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

8. AT&T confirmed that Plaintiff and Class Members' PII were released on the Dark Web.[4]

9. Upon information and belief, the Data Breach occurred in 2021 but Defendant did not begin informing victims of the Data Breach until March 30, 2024, approximately three years later. Indeed, Plaintiff and Class Members were wholly unaware of the Data Breach until they received Notice Letters from Defendant. During this time, Plaintiff and Class Members were unaware that their sensitive Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm.

10. The Notice Letter provides no further information regarding the Data Breach and only recommends that victims reset their passwords, monitor their account activity, and potentially place a fraud alert on their account. The Notice Letter does not explain how the Data Breach occurred, what steps Defendant took following the Data Breach, whether Defendant made any changes to its data security, or most importantly, whether Plaintiff and Class Members' Private Information remains in the possession of criminals.

11. By acquiring, utilizing, and benefiting from Plaintiff and Class Members' Private Information for its business purposes, Defendant owed or otherwise assumed common law, contractual, and statutory duties that extended to Plaintiff and Class Members. These duties required Defendant to design and implement adequate data security systems to protect Plaintiff and Class Members' Private Information in its possession and to keep Plaintiff and Class Members' Private Information confidential, safe, secure, and protected from unauthorized disclosure, access, dissemination, or theft.

12. Defendant breached these duties by failing to implement adequate data security measures and protocols to properly safeguard and protect Plaintiff and Class Members' Private

---

[4] *Keeping Your Account Secure*, https://www.att.com/support/article/my-account/000101995?bypasscache=1 (last visited Apri 4, 2024).

CLASS ACTION COMPLAINT - 3

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Information from a foreseeable cyberattack on its systems that resulted in the unauthorized access and theft of Plaintiff and Class Members' Private Information.

13.     Currently, the full extent of the types of Private Information, the scope of the Data Breach, and the root cause of the Data Breach are all within the exclusive control of Defendant, its agents, counsel, and forensic security vendors at this phase of the litigation.

14.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the Plaintiff and Class Members' Private Information was compromised through disclosure to an unknown and unauthorized criminal third party.

15.     Upon information and belief, Defendant breached its duties and obligations in one or more of the following ways: (1) failing to design, implement, monitor, and maintain reasonable network safeguards against foreseeable threats; (2) failing to design, implement, and maintain reasonable data retention policies; (3) failing to adequately train staff on data security; (4) failing to comply with industry-standard data security practices; (5) failing to warn Plaintiff and Class Members of Defendant's inadequate data security practices; (6) failing to encrypt or adequately encrypt the Private Information; (7) failing to recognize or detect that its network had been compromised and accessed in a timely manner to mitigate the harm; (8) failing to utilize widely available software able to detect and prevent this type of attack, and (9) otherwise failing to secure the hardware using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents.

16.     Based on the type of sophisticated and targeted criminal activity, the type of Private Information involved, and Defendant's admission that the Private Information was accessed, it can be concluded that the unauthorized criminal third party was able to successfully target Plaintiff and Class Members' Private Information, infiltrate and gain access to Defendant's

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

network, and exfiltrate Plaintiff and Class Members' Private Information, including full name, email address, mailing address, phone number, Social Security number, date of birth, AT&T account number and passcode, for the purposes of utilizing or selling the Private Information for use in future fraud and identity theft related cases.

17.     As a result of Defendant's failures and the Data Breach, Plaintiff and Class Members' identities are now at a current and substantial imminent and ongoing risk of identity theft and shall remain at risk for the rest of their lives.

18.     As Defendant instructed, advised, and warned in its Notice Letter discussed below, Plaintiff and Class Members must now closely monitor their financial accounts to guard against future identity theft and fraud. Plaintiff and Class Members have heeded such warnings to mitigate against the imminent risk of future identity theft and financial loss. Such mitigation efforts included and will continue to include into the future: (a) reviewing financial statements; (b) changing passwords; and (c) signing up for credit and identity theft monitoring services. The loss of time and other mitigation costs are tied directly to guarding against and mitigating against the imminent risk of identity theft.

19.     Plaintiff and Class Members have suffered numerous actual and concrete injuries as a direct result of the Data Breach, including: (a) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (b) loss of time and loss of productivity incurred in mitigating the materialized risk and imminent threat of identity theft; (c) financial costs incurred due to actual identity theft; (d) loss of time incurred due to actual identity theft; (e) loss of time heeding Defendant's warnings and following its instructions in the Notice Letter; (g) deprivation of value of their Private Information; (h) invasions of their privacy; and (i) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fail to undertake appropriate and adequate measures to protect it.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

20. Plaintiff brings this action on behalf of all persons whose Private Information was compromised due to Defendant's failure to adequately protect Plaintiff and Class Members' Private Information.

## II.    JURISDICTION AND VENUE

21. This Court has jurisdiction over this action under RCW 2.08.010.

22. This Court has personal jurisdiction over Defendant because it regularly conducts business in King County, Washington.[5]

23. Venue is proper in this Court pursuant to RCW 4.12.025(1), and RCW 4.92.010(1) because the Defendant has offices in, and regularly conducts business in King County, Washington.

## III.    PARTIES

24. Plaintiff Rob Sands is an individual and resident of King County, Washington. Plaintiff Rob Sands has been a customer of AT&T for over fifteen years.

25. Defendant AT&T is an international telecommunications corporation, head-quartered in Texas. Defendant offers mobile communication services and broadband connectivity to millions customers throughout Washington State.

## IV.    FACTUAL BACKGROUND

### *AT&T's Business*

26. Defendant is an international telecommunications corporation headquartered in Dallas, Texas. AT&T offers mobile communication services and broadband connectivity to millions of residential and business customers.

27. Defendant's Privacy Policy, posted on its website, states:

> We work hard to safeguard your information using technology controls and organizational controls. We protect our computer storage and network equipment. We require employees to authenticate themselves to access sensitive data. We limit access to personal information to the people who need access for their jobs.

---

[5] See https://www.att.com/stores/washington (last visited April 25, 2024)

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

And we require callers and online users to authenticate themselves before we provide account information.[6]

28.     Defendant's Privacy Policy also states: "If a breach occurs, we'll notify you as required by law."[7]

29.     Defendant's Notice Letter states: "We (AT&T) take cybersecurity very seriously and privacy is a fundamental commitment at AT&T."[8]

30.     Indeed, Defendant has made numerous misleading representations that it would adequately protect Plaintiff and Class Members' sensitive Private Information but has failed to do so.

***Defendant Acquires, Collects, and Stores the Private Information of Plaintiff and Class Members***

31.     In the ordinary course of its business, AT&T maintains the Private Information of its customers, current and past employees, consumers, and others.

32.     Because of the highly sensitive and personal nature of the information Defendant acquires and stores with respect to consumers, Defendant, upon information and belief, promises to, among other things: keep protected information private; comply with insurance industry standards related to data security and Private Information, inform consumers of its legal duties and comply with all federal and state laws protecting consumers' Private Information; only use and release Private Information for reasons that relate to telecommunications and related services, and, provide adequate notice to individuals if their Private Information is disclosed without authorization.

33.     At every step, Defendant holds onto sensitive Private Information and has a duty to protect that Private Information from unauthorized access.

34.     By obtaining, collecting, using, and deriving a benefit from Plaintiff and Class Members' Private Information, Defendant assumed legal and equitable duties, and knew or should

---

[6] *Privacy Policy*, https://about.att.com/privacy/privacy-notice.html (last visited April 1, 2024).
[7] *Id.*
[8] See *Notice Letter*, attached as Exhibit 1.

CLASS ACTION COMPLAINT - 7

have known, that it was responsible for protecting Plaintiff and Class Members' Private Information from unauthorized disclosure.

35.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

36.    Plaintiff and Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use their Private Information solely for proper business services and purposes, and to prevent the unauthorized disclosure of their Private Information.

### The Cyberattack and Data Breach

37.    AT&T detected unauthorized access to certain computer systems within its network environment.[9]

38.    AT&T took precautionary measures and reset passcodes as an extra layer of protection for AT&T accounts.[10]

39.    Through its investigation, AT&T determined that the data of 7.6 million current AT&T account holders and 65.4 million former account holders were impacted by the data breach.[11]

40.    Upon information and belief, Plaintiff and Class Members' Private Information was exfiltrated and stolen in the attack.

41.    Furthermore, the investigation determined that the accessed systems contained Private Information. Upon information and belief, this Private Information was accessible, unencrypted, unprotected, and vulnerable to acquisition and/or exfiltration by the unauthorized actor.

42.    The type of Private Information accessed by the unauthorized actor in the Data Breach includes full names, email addresses, mailing addresses, phone numbers, Social Security

---

[9]    *See Keeping Your Account Secure*, AT&T.com, *https://www.att.com/support/article/my-account/000101995?bypasscache=1 (last visited April 1, 2024).*
[10] *Id.*
[11] *Id.*

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

numbers, dates of birth, and AT&T account numbers and passcodes.[12]

43.     While AT&T stated in the Notice Letter that the unusual activity involved data sets from 2019, AT&T did not begin notifying victims until March 30, 2024, after it discovered that the Private Information of Plaintiff and Class Members were posted on the Dark Web.[13]

44.     Defendant had obligations created by contract, industry standards, common law, and its own promises and representations to keep Plaintiff and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

45.     Plaintiff and Class Members provided their Private Information directly, or indirectly, to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

46.     Through its Notice Letter, AT&T also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to take steps to mitigate their risk of identity theft, such as reviewing financial accounts, and reviewing credit reports for possible fraud.

47.     Beginning on or around March 30, 2024, Defendant issued Notice Letters by email and mail to Plaintiff and Class Members. In total, at least 73 million individuals were impacted by the Data Breach.[14]

48.     The Notice Letters sent to Plaintiff and Class Members stated Private Information, including full names, email addresses, mailing addresses, phone numbers, Social Security numbers, dates of birth, and AT&T account numbers and passcodes were accessed and exfiltrated in the Data Breach.

49.     As a result of the Data Breach, Plaintiff and 73 million Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses,

---

[12] *Id.*
[13] *Id.*
[14] *See id.*

CLASS ACTION COMPLAINT - 9

and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach and the substantial and imminent risk of identity theft and fraud.

50.    Defendant waited approximately three years to disclose the Data Brach to Plaintiff and Class Members, and only did so after the Private Information belonging to Plaintiff and Class Members were posted by cyber criminals on the Dark Web.[15] As a result of this delay, Plaintiff and Class Members had no idea their Private Information had been compromised in the Data Breach, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

51.    Defendant's failure to timely detect and report the Data Breach made its consumers vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

52.    This Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the Private Information of Plaintiff and Class Members.

53.    Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonable cybersecurity safeguards or policies to protect its consumers' Private Information or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to consumers' Private Information.

54.    Plaintiff and Class Members directly or indirectly entrusted Defendant with sensitive and confidential information, including their Private Information which includes information that is static, does not change, and can be used to commit myriad financial crimes.

55.    Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use their Private Information for authorized purposes

---

[15] *See AT&T: Data breach affects 73 million or 51 million customers. No, we won't explain.* https://arstechnica.com/security/2024/04/att-takes-2-years-to-confirm-leaked-data-belongs-to-millions-of-customers/ (last visited April 25, 2024)

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand Defendant safeguard their Private Information.

56.    The unencrypted Private Information of Plaintiff and Class Members has and will likely continue to end up for sale on the dark web as that is the *modus operandi* of hackers.[16] In fact, Plaintiff Sands has already received dark web notices as a result of this Data Breach. In addition, unencrypted Private Information may fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members. In turn, unauthorized individuals can easily access the Private Information of Plaintiff and Class Members.

57.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information.

### The Data Breach Was Foreseeable

58.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the finance industry preceding the date of the breach.

59.    In light of recent high profile data breaches at other large corporations that collect and maintain voluminous amounts of Private Information, AT&T knew or should have known that its electronic records and the Private Information that it stored and maintained would be targeted by cyber criminals and ransomware attack groups.

60.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68 percent increase from 2020.[17]

61.    Indeed, cyberattacks on telecommunications companies like AT&T have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so

---

[16] *See Id.*

[17] *See* 2021 Data Breach Annual Report, ITRC 6 (Jan. 2022), available at https://www.idtheftcenter.org/notified (last visited March 31, 2024).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

they are aware of, and prepared for, potential attacks.[18]

### *Defendant Had an Obligation to Protect Private Information*

62.     Defendant's failure to adequately secure Plaintiff and Class Members' Private Information breaches duties it owes Plaintiff and Class Members under statutory and common law. Moreover, Plaintiff and Class Members surrendered their highly sensitive personal data to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also has an implied duty to safeguard Its data, independent of any statute.

63.     Defendant was prohibited by the Federal Trade Commission Act,  15 U.S.C. § 45 (the "FTC Act"), from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. S*ee, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

64.     Therefore, the increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

65.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Plaintiff and Class Members.

66.     Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the Private Information in its

---

[18] *FBI, Secret Service Warn of Targeted*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited April 1, 2024).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

possession was adequately secured and protected.

67.     Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including by not sharing information with other entities who maintained substandard data security systems.

68.     Defendant owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach on its data security systems in a timely manner.

69.     Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

70.     Defendant owed a duty to Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust this Private Information to Defendant.

71.     Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

72.     Defendant owed a duty to Plaintiff and Class Members to encrypt and/or more reliably encrypt Plaintiff and Class Members' Private Information and monitor user behavior and activity in order to identify possible threats.

73.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members and the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

74.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to, at least, tens of thousands of individuals' Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted or insufficiently encrypted data.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

*Value of Private Information*

75.    The PII and other Private Information of individuals remains of high value to criminals, as evidenced by the prices criminals will pay through the Dark Web. Numerous sources cite Dark Web pricing for stolen identity credentials. For example, Private Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[19] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the Dark Web.[20] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[21]

76.    Based on the foregoing, the information compromised in the Data Breach, including full names matched with Social Security numbers, is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

77.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[22]

78.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

79.    The fraudulent activity resulting from the Data Breach may not come to light for years as there may be a time lag between when harm occurs versus when it is discovered, and

---

[19] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[20] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[21] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited April 4, 2024).

[22] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

also between when the Private Information is stolen and when it is used. According to the U.S.

Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[23]

80.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

81.    Plaintiff and Class Members now face a lifetime of constant surveillance of their financial and personal records, credit monitoring, and loss of rights. Plaintiff and Class Members are incurring, and will continue to incur, such damages in addition to any fraudulent use of their Private Information.

82.    Defendant has acknowledged the risk and harm caused to Plaintiff and Class Members as a result of the Data Breach, and encouraged Plaintiff and Class Members to remain vigilant by monitoring account activity and credit reports.

### Defendant Failed to Properly Protect Plaintiff and Class Members' Private Information

83.    Defendant could have prevented this Data Breach by properly securing and encrypting the systems containing the Private Information of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data, especially for individuals with whom it had not had a relationship for a period of time.

84.    Defendant's negligence in safeguarding the Private Information of Plaintiff and

---

[23] *Report to Congressional Requesters*, GAO, at 29 (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendant to protect and secure sensitive data they possess.

85.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

86.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." [24]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[25]

87.    The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for their respective lifetimes.

88.    To prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

    a.  Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

    b.  Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

---

[24] *See Generally Fighting Identity Theft With the Red Flags Rule: A How-To Guide for Business*, FED. TRADE COMM., https://www.ftc.gov/business-guidance/resources/fighting-identity-theft-red-flags-rule-how-guide-business (last visited April 1, 2024).

[25] *Id.*

CLASS ACTION COMPLAINT - 16

c. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

d. Configure firewalls to block access to known malicious IP addresses.

e. Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

f. Set anti-virus and anti-malware programs to conduct regular scans automatically.

g. Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

h. Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

i. Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

j. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

k. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

l. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

m. Execute operating system environments or specific programs in a virtualized environment.

n. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[26]

89.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

---

[26] *Id.* at 3-4.

CLASS ACTION COMPLAINT - 17

a. **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

b. **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net).

c. **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

d. **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

e. **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

f. **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

g. **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[27]

90.     To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

---

[27] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://www.cisa.gov/news-events/news/protecting-against-ransomware (last visited April 1, 2024).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

1. **Secure internet-facing assets**
   a. Apply latest security updates;
   b. Use threat and vulnerability management;
   c. Perform regular audit; remove privileged credentials;

2. **Thoroughly investigate and remediate alerts**
   a. Prioritize and treat commodity malware infections as potential full compromise;

3. **Include IT Pros in security discussions**
   a. Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

4. **Build credential hygiene**
   a. Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

5. **Apply principle of least-privilege**
   a. Monitor for adversarial activities;
   b. Hunt for brute force attempts;
   c. Monitor for cleanup of Event Logs;
   d. Analyze logon events;

6. **Harden infrastructure**
   a. Use Windows Defender Firewall;
   b. Enable tamper protection;
   c. Enable cloud-delivered protection;
   d. Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[28]

91.     Moreover, given that Defendant was storing the Private Information of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

92.     The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of Plaintiff and Class Members.

93.     As a result of computer systems in need of security upgrades, inadequate

---

[28] *See Human-operated ransomware attacks: A preventable disaster*, Microsoft (Mar. 5, 2020). https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

CLASS ACTION COMPLAINT - 19

procedures for handling email phishing attacks, viruses, malignant computer code, hacking attacks, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

94.     Because Defendant failed to properly protect and safeguard Plaintiff's and Class Members' Private Information, an unauthorized third party was able to access Defendant's network, and access Defendant's database and system configuration files and exfiltrate that data.

### Defendants Failed to Comply with Industry Standards

95.     As shown above, experts studying cyber security routinely identify companies in the Telecommunications industry as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

96.     Several best practices have been identified that, at a minimum, should be implemented by telecommunications service providers like Defendant, including, but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

97.     Other best cybersecurity practices that are standard in the telecommunications industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

98.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

in reasonable cybersecurity readiness.

99.    The foregoing frameworks are existing and applicable industry standards in the telecommunications services industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

100.    Upon information and belief, Defendant failed to comply with one or more of the foregoing industry standards.

### Defendant's Negligent Acts and Breaches

101.    Defendant participated in and controlled the process of gathering the Private Information from Plaintiff and Class Members.

102.    Defendant therefore assumed and otherwise owed duties and obligations to Plaintiff and Class Members to take reasonable measures to protect the Private Information, including the duty of oversight, training, instruction, testing of the data security policies and network systems. Defendant breached these obligations to Plaintiff and Class Members and was otherwise negligent because it failed to properly implement data security systems and policies for its telecommunications services network that would adequately safeguard Plaintiff and Class Members' Private Information. Upon information and belief, Defendant's unlawful conduct included, but is not limited to, one or more of the following acts and omissions:

1.    Failing to design and maintain an adequate data security system to reduce the risk of data breaches and protect Plaintiff and Class Members' Private Information;

2.    Failing to properly monitor its data security systems for data security vulnerabilities and risk;

3.    Failing to test and assess the adequacy of its data security system;

4.    Failing to develop adequate training programs related to the proper handling of emails and email security practices;

5.    Failing to develop and put into place uniform procedures and data security protections for its network;

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

6.  Failing to adequately fund and allocate resources for the adequate design, operation, maintenance, and updating necessary to meet industry standards for data security protection;

7.  Failing to ensure or otherwise require that it was compliant with FTC guidelines for cybersecurity;

8.  Failing to ensure or otherwise require that it was adhering to one or more of industry standards for cybersecurity discussed above;

9.  Failing to implement or update antivirus and malware protection software in need of security updating;

10. Failing to require encryption or adequate encryption on its data systems;

11. Otherwise negligently and unlawfully failing to safeguard Plaintiff's and Class Members' Private Information provided to Defendant, which in turn allowed cyberthieves to access its IT systems.

## V.    CLASS ACTION ALLEGATIONS

102.    <u>Class Definition</u>. Under Civil Rules 23(a) and (b)(3), Plaintiff brings this case as a class action against Defendant on behalf of the Class preliminarily defined as follows:

> All individuals residing in Washington whose Private Information was compromised in the Data Breach disclosed by AT&T in March 2024.

103.    Excluded from the Class are Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, and any judge to whom this case is assigned, as well as his or her staff and immediate family.

104.    Plaintiff and Class Members reserve the right to amend the Class definition.

105.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements of CR 23.

106.    <u>Numerosity</u>. The proposed Class consists of thousands of members—far too many to join in a single action.

CLASS ACTION COMPLAINT - 22

107.    <u>Ascertainability</u>. Class Members are readily identifiable from information in Defendant's possession, custody, or control.

108.    <u>Typicality</u>. Plaintiffs' claims are typical of Class Members' claims, as each arise from the same Data Breach, the same alleged negligence of and/or statutory violations by Defendant, and the same unreasonable manner of notifying individuals regarding the Data Breach.

109.    <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff's interests do not conflict with those of the Class. Plaintiff has retained counsel experienced in complex class action litigation and data privacy to vigorously prosecute this action on behalf of the Class, including in the capacity as lead counsel.

110.    <u>Commonality</u>. Plaintiffs' and Class Members' claims raise predominantly common factual and legal questions that can be answered for all Class Members through a single class-wide proceeding. For example, to resolve any Class Member's claims, it will be necessary to answer the following questions: (a) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach; (b) Whether Defendant's conduct was negligent; and (c) Whether Plaintiff and the Class are entitled to damages and/or injunctive relief.

111.    In addition to satisfying the prerequisites of CR 23(a), Plaintiff satisfies the requirements for maintaining a class action under CR 23(b). Common questions of law and fact predominate over any questions affecting only individual Class Members, and a class action is superior to individual litigation or any other available methods for the fair and efficient adjudication of the controversy. The damages available to individual plaintiffs are insufficient to make litigation addressing Defendant's privacy practices economically feasible in the absence of the class action procedure.

112.    In the alternative, class certification is appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class Members as a whole.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

# VI.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### NEGLIGENCE
*Claim of Relief for Plaintiff and Class Members and Against Defendant*

113.    Plaintiff incorporates by reference all foregoing factual allegations.

115.    Plaintiff and the Class entrusted Defendant with their Private Information.

116.    Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

117.    Defendant has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

118.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

119.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the Private Information of Plaintiff and the Class in Defendant's possession was adequately secured and protected.

120.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain.

121.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiff and the Class.

122.    Defendant's duty to use reasonable security measures arose as a result of the

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant, either directly or indirectly, with their confidential Private Information, a necessary part of obtaining services from Defendant.

123.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

124.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

125.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and Class Members, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

126.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

127.    Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

128.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

129.    Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent,

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

130.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Private Information of Plaintiff and the Class.

131.    Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

132.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and the Class during the time the Private Information was within Defendant's possession or control.

133.    Defendant improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

134.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiff and the Class in the face of increased risk of theft.

135.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

136.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove Private Information that it was no longer required to retain pursuant to regulations.

137.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

138.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the Private Information of Plaintiff and the Class would not have been

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

compromised.

139. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Nationwide Class. The Private Information of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

140. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

141. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

142. Defendant's violation of Section 5 of the FTC Act constitutes negligence.

143. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

144. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

145. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication,

and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

146.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

147.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

## SECOND CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
*Claim of Relief for Plaintiff and Class Members and Against Defendant*

157.    Plaintiff incorporates by reference all foregoing factual allegations.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

158.    Plaintiff and Class Members' Private Information was provided to Defendant as part of telecommunication services that Defendant provided to Plaintiff and Class Members.

159.    Plaintiff and Class Members agreed to pay Defendant for telecommunication services.

160.    Defendant and the Plaintiff and Class Members entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the security of Plaintiff's and Class Members' Private Information, whereby, Defendant was obligated to take reasonable steps to secure and safeguard Plaintiff's and Class Members' Private Information.

161.    Defendant had an implied duty of good faith to ensure that the Private Information of Plaintiff and Class Members in its possession was only used in accordance with its contractual obligations.

162.    Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class Members' Private Information and to comply with industry standards and applicable laws and regulations for the security of this information.

163.    Under these implied contracts for data security, Defendant was further obligated to provide Plaintiff and all Class Members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information.

164.    Defendant breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

165.    Defendant further breached the implied contract by providing untimely notification to Plaintiff and Class Members who may already be victims of identity fraud or theft or are at present risk of becoming victims of identity theft or fraud.

166.    The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

167.    As a result of Defendant's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain.

168.    Had Defendant disclosed that its data security was inadequate, neither the Plaintiff or Class Members, nor any reasonable person would have entered into such contracts with Defendant.

169.    As a result of Data Breach, Plaintiff and Class Members suffered actual damages resulting from the theft of their Private Information, as well as the loss of control of their Private Information, and remain at present risk of suffering additional damages.

170.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

171.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

### THIRD CAUSE OF ACTION
**UNJUST ENRICHMENT**
*Claim of Relief for Plaintiff and Class Members and Against Defendant*

172.    Plaintiff incorporates by reference all foregoing factual allegations.

173.    This claim is pleaded in the alternative to the breach of implied contract claim.

174.    Plaintiff and Class Members conferred a benefit upon Defendant. Defendant benefitted from using their payment and Private Information to provide and market telecommunication services. Furthermore, Defendant benefitted from using their Private Information to collect payment.

175.    Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members (or their third-party agents). Furthermore, Defendant benefited from receiving Plaintiff's and Class Members' payment and Private Information, as they were used to provide telecommunication services.

CLASS ACTION COMPLAINT - 30

176. Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

177. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

178. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

179. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class Members' Private Information and payment because Defendant failed to adequately protect their Private Information.

180. Plaintiff and Class Members have no adequate remedy at law.

181. Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT,**
**RCW 19.86.020**
***Claim of Relief for Plaintiff and Class Members and Against Defendant***

182. Plaintiff incorporates by reference all foregoing factual allegations.

183. The Washington State Consumer Protection Act, RCW 19.86.020 (the "CPA") prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as those terms are described by the CPA and relevant case law.

184. Defendant is a "person" as described in RWC 19.86.010(1).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

185.    Defendant engages in "trade" and "commerce" as described in RCW 19.86.010(2) in that it engages in the sale of services and commerce directly and indirectly affecting the people of the State of Washington.

186.    By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the CPA, in that Defendant's practices were injurious to the public interest because they injured other persons, had the capacity to injure other persons, and have the capacity to injure other persons.

187.    In the course of conducting its business, Defendant committed "unfair or deceptive acts or practices" by, among other things, knowingly failing to ensure the safeguarding and protection of Plaintiff's and Class Members' Private Information by the entities to whom it provided that Private Information, and by violating the common law alleged herein in the process. Plaintiff and Class Members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. As described above, Defendant's wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

188.    Defendant also violated the CPA by concealing from Plaintiff and Class Members information regarding the unauthorized release and disclosure of their Private Information. If Plaintiff and Class Members had been notified in an appropriate fashion, and had the information not been hidden from them, they could have taken precautions to safeguard and protect their Private Information and identities.

189.    Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair or deceptive acts or practices" in violation of the CPA in that Defendant's wrongful conduct is substantially injurious to other persons, had the capacity to injure other persons, and has the capacity to injure other persons.

CLASS ACTION COMPLAINT - 32

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

190.     The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

191.     As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the CPA, Plaintiff and Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, among other things, (1) a present and imminent, immediate and the continuing increased risk of identity theft and identity fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (2) invasion of privacy; (3) breach of the confidentiality of their Private Information; (5) deprivation of the value of their Private Information, for which there is a well-established national and international market; and/or (6) the financial and temporal cost of monitoring credit, monitoring financial accounts, and mitigating damages.

192.     Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of himself and Class Members, seek restitution and an injunction prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to ensure the safeguarding and protection of Plaintiff's and Class Members' Private Information by the entities to whom it provides that Private Information.

193.     Plaintiff, on behalf of himself and Class Members, also seeks to recover actual damages sustained by each Class Member together with the costs of the suit, including reasonable attorneys' fees. In addition, Plaintiff, on behalf of himself and Class Members, requests that this Court use its discretion, pursuant to RCW 19.86.090, to increase the damages award for each Class Member by three times the actual damages sustained, not to exceed $25,000 per Class Member.

## FIFTH CAUSE OF ACTION
### VIOLATION OF WASHINGTON DATA BREACH DISCLOSURE LAW
### RCW 19.255.005, *et seq.*

CLASS ACTION COMPLAINT - 33

*Claim of Relief for Plaintiff and Class Members and Against Defendant*

194.    Plaintiff incorporates by reference all foregoing factual allegations.

195.    Under RCW 19.255.010(2), "[a]ny person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

196.    Upon information and belief, this statute applies to Defendant because Defendant does not own nor license the Private Information in question. Instead, the owners and/or licensees of the Private Information are Plaintiff and Class Members.

197.    Here, the Data Breach led to "unauthorized acquisition of computerized data that compromise[d] the security, confidentiality, [and] integrity of personal information maintained by" Defendant, leading to a "breach of the security of [Defendant's] systems," as defined by RCW 19.255.010.

198.    Defendant failed to disclose that the Private Information, of Plaintiff and Class Members, that had been compromised "immediately" upon discovery, and thus unreasonably delayed informing Plaintiff and the proposed Class about the Data Breach.

199.    In fact, Defendant appears to have delayed notifying its current and former customers until March 30, 2024—approximately three years—after the Data Breach.

200.    Thus, Defendant violated the Washington Data Breach Disclosure Law.

## VII.    PRAYER FOR RELIEF

Plaintiff, individually and on behalf of Class Members, requests that the Court enter judgment against Defendant as follows:

A.    An order certifying the proposed Class pursuant to Civil Rule 23 and appointing Plaintiff and their counsel to represent the Class;

CLASS ACTION COMPLAINT - 34

B.    An order awarding Plaintiff and Class Members monetary relief, including actual damages and penalties;

C.    An order awarding injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as necessary to protect the interests of Plaintiff and Class Members, including, but not limited to, an order:

    i.    Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    Requiring Defendant to protect, including through encryption, all data collected through the course of their businesses in accordance with all applicable regulations, industry standards, and state or local laws;

    iii.    Requiring Defendant to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.    Requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

    v.    Prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

    vi.    Requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    vii.    Requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

CLASS ACTION COMPLAINT - 35

viii.   Requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures;

ix.   Requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.   Requiring Defendant to conduct regular database scanning and securing checks;

xi.   Requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiff and Class Members;

xii.   Requiring Defendant to routinely and continually conduct internal training and education, and, on an annual basis, to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   Requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting Private Information;

xiv.   Requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

xv.     Requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.    Requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xvii.   For a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Class, and to report any deficiencies with compliance of the Court's final judgment;

D.      An award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law;

E.      An award of attorney's fees, costs, and expenses, as permitted by law;

F.      An award of pre-judgment and post-judgment interest, as permitted by law;

G.      Leave to amend this Complaint to conform to the evidence produced at trial; and

H.      Such other and further relief as this Court may deem just and proper.

DATED this 30th day of April 2024.                          Respectfully Submitted,

/s/ Timothy W. Emery
Timothy W. Emery, WSBA No. 34078
Patrick B. Reddy, WSBA No. 34092
Brook E. Garberding, WSBA No. 37140
Paul Cipriani, WSBA No. 59991
**EMERY REDDY, PLLC**
600 Stewart Street, Ste 1100
Seattle, WA 98101
Phone: (206) 442-9106
Fax: (206) 441-9711
Email: emeryt@emeryreddy.com
Email: reddyp@emeryreddy.com
Email: brook@emeryreddy.com
Email: paul@emeryreddy.com

# Exhibit 1


[LETTERHEAD]
[ADDRESS]

**NOTICE OF DATA BREACH**

April XX, 2024

Dear [Name]:

At AT&T, we take the security of your data very seriously. We're writing to inform you that AT&T has determined that some of your personal information was compromised. To help protect your identity, we're offering you one year of complimentary credit monitoring, identity theft detection and resolution services provided by Experian's® IdentityWorks℠. **While this service is free, you must follow the enclosed instructions to enroll.**

**What happened?** On March 26, 2024, we determined that AT&T customer information was included in a dataset released on the dark web on March 17, 2024.

**What information was involved?** The information varied by individual and account, but may have included full name, email address, mailing address, phone number, social security number, date of birth, AT&T account number and AT&T passcode. To the best of our knowledge, personal financial information and call history were not included. Based on our investigation to date, the data appears to be from June 2019 or earlier.

**What is AT&T doing to help?** We're offering you the complementary credit monitoring, identity theft detection and resolution services described above. If you have an active account that was impacted, we've taken precautionary measures and reset your passcode. A passcode is a numerical PIN, usually four digits, used in addition to your password as an extra layer of protection for your account. Additionally, we launched a robust investigation supported by internal and external cybersecurity experts, and we are regularly reviewing and updating the measures we take to protect your information.

**What can you do?**
- **Stay vigilant.** We recommend that you review the enclosed Information About Identity Theft Protection and encourage you to remain vigilant by monitoring your personal accounts and credit reports for any suspicious activity. If you want to personalize your passcode we reset for you, you can do so online via myAT&T, MyAT&T app, or call customer care at 1-866-346-0416.
- **Watch out for suspicious calls or emails.** We also recommend that you remain alert for unsolicited communications seeking your personal information. You should be cautious about entering your username and password on links provided through emails, even if it looks like the company's website. The safest route is to go directly to the company's website to log in.

We apologize this has happened. We're committed to keeping your information secure.
Please do not hesitate to call us at 1-866-346-0416 Monday through Friday, 8 a.m. to 9 p.m. CST, or visit att.com/accountsafety if you have questions regarding this matter.

Sincerely,

AT&T

**Experian's® IdentityWorks<sup>SM</sup>**

AT&T is providing you with an IdentityWorks<sup>SM</sup> membership at no charge.  After you complete registration, you'll have increased visibility into any possible fraudulent activity.  You will also have an insurance policy of up to $1 million in coverage should you experience identity theft and an Identity Restoration team to guide you through the recovery process.

To activate your membership and start monitoring your personal information, please follow the steps below:
- **Enroll by August 30, 2024** (Your code will not work after this date.)
- **Go to** the Experian® IdentityWorks<sup>SM</sup> website and select 'Get Started'
- **Enter** your activation code: **ACTIVATION CODE**

If you have questions about the product, need assistance with identity restoration, or would like an alternative to enrolling in Experian's® IdentityWorks<sup>SM</sup> online, please contact Experian's customer care team at 1-833-931-4853 by **August 30, 2024**.  Be prepared to provide engagement number **[ENGAGE]** as proof of eligibility for the identity restoration services provided by Experian.

**IdentityWorks<sup>SM</sup> Includes:**
- **Experian Credit Report at Signup:**  See what information is associated with your credit file. Daily credit reports are available for online members only.
- **Credit Monitoring:**  Actively monitors Experian file for indicators of fraud.
- **Internet Surveillance:**  Technology searches the web, chat rooms, and bulletin boards 24/7 to identify trading or selling of your personal information on the dark web.
- **Identity Restoration:**  Identity Restoration specialists are immediately available to help you address credit and non-credit related fraud.
- **Credit Lock / Unlock:**  This key feature provides you the ability to lock / unlock your Experian credit file.
- **Experian IdentityWorks ExtendCARE<sup>TM</sup>:**  You receive the same high-level of Identity Restoration support even after your Experian® IdentityWorks<sup>SM</sup> membership has expired.
- **Up to $1 Million Identity Theft Insurance:**  Provides coverage for certain costs and unauthorized electronic fund transfers.

Please note that Identity Restoration support is available to you for one year from the date of this letter and does not require any action on your part at this time.  The Terms and Conditions for this offer are located at ExperianIDWorks.com/restoration.  You will also find self-help tips and information about identity protection at this site.

## Information About Identity Theft Protection

### Monitor Your Accounts

We recommend that you regularly review statements from your accounts and periodically obtain your credit report from one or more of the national credit reporting companies. You may obtain a free copy of your credit report online at www.annualcreditreport.com, by calling toll-free 1-877-322-8228, or by mailing an Annual Credit Report Request Form (available at www.annualcreditreport.com) to Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA, 30348-5281. You may also purchase a copy of your credit report by contacting one or more of the three national credit reporting agencies listed below.

Equifax®                        Experian®                       TransUnion®
P.O. Box 740241                 P.O. Box 2002                   P.O. Box 1000
Atlanta, GA 30374-0241          Allen, TX 75013-9701            Chester, PA 19016-1000
1-866-349-5191                  1-866-200-6020                  1-800-888-4213
www.equifax.com                 www.experian.com                www.transunion.com

You should remain vigilant for incidents of fraud or identity theft by reviewing account statements and monitoring free credit reports. When you receive your credit reports, review them carefully. Look for accounts or creditor inquiries that you did not initiate or do not recognize. Look for information, such as home address and Social Security number, that is not accurate. If you see anything you do not understand, call the credit reporting agency at the telephone number on the report.

You have rights under the federal Fair Credit Reporting Act (FCRA), which governs the collection and use of information about you by consumer reporting agencies. For more information about your rights under the FCRA, please visit www.consumer.ftc.gov/articles/pdf-0096-fair-credit-reporting-act.pdf or www.ftc.gov.

### Credit Freeze

You have the right to put a security freeze, also known as a credit freeze, on your credit file, so that no new credit can be opened in your name without the use of a Personal Identification Number (PIN) that is issued to you when you initiate a freeze. A credit freeze is designed to prevent potential credit grantors from accessing your credit report without your consent. If you place a credit freeze, potential creditors and other third parties will not be able to access your credit report unless you temporarily lift the freeze. Therefore, using a credit freeze may delay your ability to obtain credit. Pursuant to federal law, you cannot be charged to place or lift a credit freeze on your credit report. Should you wish to place a credit freeze, please contact all three major consumer reporting agencies listed below.

Equifax®                        Experian®                       TransUnion®
P.O. Box 105788                 P.O. Box 9554                   P.O. Box 160
Atlanta, GA 30348-5788          Allen, TX 75013-9554            Woodlyn, PA 19094
1-888-298-0045                  1-888-397-3742                  1-800-916-8800
www.equifax.com/personal/credit- www.experian.com/ freeze/center.html  www.transunion.com/credit-freeze
report-services

You must separately place a credit freeze on your credit file at each credit reporting agency. The following information should be included when requesting a credit freeze:

- Full name, with middle initial and any suffixes;
- Social Security number;
- Date of birth (month, day, and year);
- Current address and previous addresses for the past five (5) years;
- Proof of current address, such as a current utility bill or telephone bill;
- Other personal information as required by the applicable credit reporting agency.

If you request a credit freeze online or by phone, then the credit reporting agencies have one business day after receiving your request to place a credit freeze on your credit file report. If you request a lift of the credit freeze online or by phone, then the credit reporting agency must lift the freeze within one hour. If you request a credit freeze or lift of a credit freeze by mail, then the credit agency must place or lift the credit freeze no later than three business days after getting your request.

**Fraud Alerts**

You also have the right to place an initial or extended fraud alert on your file at no cost. An initial fraud alert lasts one year and is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting seven years. Should you wish to place a fraud alert, please contact any one of the agencies listed below. The agency you contact will then contact the other two credit agencies.

| | | |
|---|---|---|
| Equifax® | Experian® | TransUnion® |
| P.O. Box 105069 | P.O. Box 9554 | P.O. Box 2000 |
| Atlanta, GA 30348-5069 | Allen, TX 75013-9554 | Chester, PA 19016-2000 |
| 1-800-525-6285 | 1-888-397-3742 | 1-800-680-7289 |
| www.equifax.com/personal/credit-report-services/credit-fraud-alerts/ | www.experian.com/ fraud/center.html | www.transunion.com/fraud-alerts |

**Federal Trade Commission and State Attorneys General Offices**

If you find suspicious activity on your credit reports or have reason to believe your information is being misused, call your local law enforcement agency or state Attorney General and file a police report; this notice was not delayed by law enforcement. Get a copy of the report; many creditors want the information it contains to alleviate you of the fraudulent debts. You also should file a complaint with the Federal Trade Commission (FTC) using the contact information below. Your complaint will be added to the FTC's Consumer Sentinel database, where it will be accessible to law enforcement for their investigations.

You may also contact the FTC at **Federal Trade Commission**, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580, www.ftc.gov/bcp/edu/microsites/idtheft/, 1-877-IDTHEFT (438-4338), to learn more about identity theft and the steps you can take to protect yourself and prevent such activity.

- Oregon residents are advised to report any suspected identity theft to law enforcement, including the FTC, and the Oregon Attorney General.
- North Carolina residents may also contact the North Carolina Office of the Attorney General, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, www.ncdoj.gov, 1-877-566-7226.
- Iowa residents are advised to report any suspected identity theft to law enforcement or to the Iowa Attorney General.
- If you are a Maryland resident, you may contact the Maryland Office of the Attorney General at Consumer Protection Division Office, 44 North Potomac Street, Suite 104, Hagerstown, MD 21740, https://www.marylandattorneygeneral.gov/Pages/contactus.aspx, 1-888-743-0023, or 410-528-8662 (consumer).
- District of Columbia residents may contact the Office of the Attorney General for the District of Columbia, Office of Consumer Protection, 400 6th St. NW, Washington, D.C. 20001, https://oag.dc.gov/, (202) 442-9828 (consumer protection hotline).
- Rhode Island residents may contact the Office of the Attorney General, 150 South Main Street, Providence, RI 02930, (401) 274-4400.

**For New York Residents**

New York residents can also consider placing a Security Freeze on their credit reports. A Security Freeze prevents most potential creditors from viewing your credit reports, further protecting against the opening of unauthorized accounts. Please note that credit reporting agencies may charge a fee to place a Security Freeze. For more information on placing a security freeze on your credit reports, please review the New York Department of State Division of Consumer Protection website at https://dos.nysits.acsitefactory.com/consumer-protection.

When you receive a credit report from a credit reporting agency, review the report carefully. Look for accounts you did not open, inquiries from creditors that you did not initiate, and confirm that your personal information, such as home address and Social Security number, is accurate. If you see anything that you do not understand or recognize, call the credit reporting agency at the telephone number on the report. You should also call your local police department and file a report of identity theft. Finally, you should make sure to keep a copy of the police report in case you need to provide it to creditors or credit reporting agencies when accessing or disputing inaccurate information.

Even if you do not find signs of fraud on your credit reports, we recommend that you remain vigilant in reviewing your credit reports from the three major credit reporting agencies. You may obtain a free copy of your credit report once every 12 months by visiting www.annualcreditreport.com, calling toll-free 877-322-8228 or by completing an Annual Credit Request Form at: www.ftc.gov/bcp/menus/consumer/credit/rights.shtm and mailing to:

Annual Credit Report Request Service
P.O. Box 1025281
Atlanta, GA 30348-5283

You may report any incidents of suspected identity theft to law enforcement, including the FTC, your state Attorney General's office, or local law enforcement. For more information on identity theft, you can visit the following websites:

- New York Department of State Division of Consumer Protection: https://dos.nysits.acsitefactory.com/consumer-protection; 1-800-697-1220
- NYS Attorney General at: https://ag.ny.gov/; 1-800-771-7755
- FTC at: www.ftc.gov/bcp/edu/microsites/idtheft/; https://www.identitytheft.gov/#/

# EXHIBIT B

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ROB SANDS, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | SUMMONS (20 DAYS) |
| v. | |
| AT&T, INC., a foreign corporation doing business in Washington State | |
| Defendant. | |

TO:     AT&T, INC.

A lawsuit has been started against you in the above entitled court by the above-captioned plaintiff.  Plaintiff's claims are stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond by stating your defense in writing, and serve a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice.  A default judgment is one where the plaintiff is entitled to what he asks for because you have not responded.  If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

1
2
3
4

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons.  Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

5
6

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

7
8

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of The State of Washington.

9

DATED this 30th day of April, 2024.                    Respectfully Submitted,

10
11

EMERY | REDDY, PLLC

12

By:    /s/ *Timothy W. Emery*

13      Timothy W. Emery, WSBA No. 34078
        Patrick B. Reddy, WSBA No. 34092

14      Brook E. Garberding, WSBA No. 37140
        Paul Cipriani, WSBA No. 59991

15      **EMERY REDDY, PLLC**
        600 Stewart Street, Ste 1100

16      Seattle, WA 98101
        Phone: (206) 442-9106

17      Fax: (206) 441-9711
        Email: emeryt@emeryreddy.com

18      Email: reddyp@emeryreddy.com

19      Email: brook@emeryreddy.com
        Email: paul@emeryreddy.com

20
21
22
23
24
25
26

# EXHIBIT C

ØŠÒÖ

Œ€Ï ÁŒÜ Á‑Œ€ŒÏ JÁÚT
SŒÕ Ö Á Õ UWⅰ VÝ
ÙWÚÜ ⅰ Ü Á Ü WÜ Á ŠÒÜS
ÒŠŠÒÖ
ÔŒÜ Ò ⅣⅣ Œ ÉŒ J Í JFÈ ÁÜ Œ

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR THE COUNTY OF KING

| | |
|---|---|
| Rob Sands | No. 24-2-09591-8  SEA |
| VS | **CASE INFORMATION COVER SHEET AND AREA DESIGNATION** |
| AT&T | |
| | (CICS) |

### CAUSE OF ACTION

TTO - Tort /Other

### AREA OF DESIGNATION

SEA          Defined as all King County north of Interstate 90 and including all of Interstate 90 right of way, all of the cities of Seattle, Mercer Island, Issaquah, and North Bend, and all of Vashon and Maury Islands.

# EXHIBIT D

ØŠÒÖ

ŒŒ ĂŒÜ Á<del>H</del>ŒŒ JÁÚT
S<del>Œ</del>Ō/ŎUWÞVÝ
ÙŴÚÙŒ QÜ ŒÙWÜVŎŠÒÜS
ŎŽ ŠÒÖ
ŌŒÜ ÒÅ ÃÍ ŒŒÍ JÍ J FÜ Å ÜŒŒ

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR THE COUNTY OF KING

| | |
|---|---|
| Rob Sands | No. 24-2-09591-8  SEA |
| VS | **ORDER SETTING CIVIL CASE SCHEDULE** |
| AT&T | **ASSIGNED JUDGE: Elizabeth Berns, Dept. 25**<br>FILED DATE: 04/30/2024<br>TRIAL DATE:05/05/2025 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

### I.  NOTICES

**NOTICE TO PLAINTIFF:**
The Plaintiff may serve a copy of this **Order Setting Case Schedule (*Schedule*)** on the Defendant(s) along with the ***Summons and Complaint/Petition.***  Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the ***Summons and Complaint/Petition*** or (2) service of the Defendant's first response to the ***Complaint/Petition***, whether that response is a ***Notice of Appearance***, a response, or a Civil Rule 12 (CR 12) motion.  The ***Schedule*** may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLCR*] -- especially those referred to in this *Schedule*. In order to comply with the *Schedule*, it will be necessary for attorneys and parties to pursue their cases vigorously from the day the case is filed. For example, discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties, claims, and defenses, for disclosing possible witnesses [*See KCLCR 26*], and for meeting the discovery cutoff date [*See KCLCR 37(g)*].

**You are required to give a copy of these documents to all parties in this case.**

## I. NOTICES (continued)

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD-PARTY COMPLAINTS:**
A filing fee of **$240** must be paid when any answer that includes additional claims is filed in an existing case.

**KCLCR 4.2(a)(2)**
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the deadline in the schedule. The court will review the confirmation of joinder document to determine if a hearing is required. If a Show Cause order is issued, all parties cited in the order must appear before their Chief Civil Judge.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this *Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any pending motions by notifying the bailiff to the assigned judge.

 Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a *Notice of Settlement* pursuant to KCLCR 41, and forwarding a courtesy copy to the assigned judge. If a final decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice of Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLCR 41(b)(2)(A) to present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office, parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and crossclaims have been filed. If mandatory arbitration is required after the deadline, parties must obtain an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must pay a $250 arbitration fee**. If a party seeks a trial de novo when an arbitration award is appealed, a fee of $400 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
**All** parties will be assessed a fee authorized by King County Code 4A.630.020 whenever the Superior Court Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Civil Rule 41.

**King County Local Rules are available for viewing at <u>www.kingcounty.gov/courts/clerk.</u>**

## II. CASE SCHEDULE

| * | CASE EVENT | EVENT DATE |
|---|---|---|
|  | Case Filed and Schedule Issued. | 04/30/2024 |
| * | Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [*See KCLMAR 2.1(a) and Notices on Page 2*]. **$250 arbitration fee must be paid** | 10/08/2024 |
| * | **DEADLINE** to file Confirmation of Joinder if not subject to Arbitration [*See KCLCR 4.2(a) and Notices on Page 2*]. | 10/08/2024 |
|  | **DEADLINE** for Hearing Motions to Change Case Assignment Area [*KCLCR 82(e)*]. | 10/22/2024 |
|  | **DEADLINE** for Disclosure of Possible Primary Witnesses [*See KCLCR 26(k)*]. | 12/02/2024 |
|  | **DEADLINE** for Disclosure of Possible Additional Witnesses [*See KCLCR 26(k)*]. | 01/13/2025 |
|  | **DEADLINE** for Jury Demand [*See KCLCR 38(b)(2)*]. | 01/27/2025 |
|  | **DEADLINE** for a Change in Trial Date [*See KCLCR 40(e)(2)*]. | 01/27/2025 |
|  | **DEADLINE** for Discovery Cutoff [*See KCLCR 37(g)*]. | 03/17/2025 |
|  | **DEADLINE** for Engaging in Alternative Dispute Resolution [*See KCLCR 16(b)*]. | 04/07/2025 |
|  | **DEADLINE**: Exchange Witness & Exhibit Lists & Documentary Exhibits [*KCLCR 4(j)*]. | 04/14/2025 |
| * | **DEADLINE** to file Joint Confirmation of Trial Readiness [*See KCLCR 16(a)(1)*] | 04/14/2025 |
|  | **DEADLINE** for Hearing Dispositive Pretrial Motions [*See KCLCR 56; CR 56*]. | 04/21/2025 |
| * | Joint Statement of Evidence [*See KCLCR 4 (k)*] | 04/28/2025 |
|  | **DEADLINE** for filing Trial Briefs, Proposed Findings of Fact and Conclusions of Law and Jury Instructions (Do not file proposed Findings of Fact and Conclusions of Law with the Clerk) | 04/28/2025 |
|  | Trial Date [*See KCLCR 40*]. | 05/05/2025 |

*The * indicates a document that must be filed with the Superior Court Clerk's Office by the date shown.*

## III. ORDER

Pursuant to King County Local Rule 4 [*KCLCR 4*], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this *Order Setting Civil Case Schedule* and attachment on all other parties.

DATED:    04/30/2024

_____
PRESIDING JUDGE

## IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE

**READ THIS ORDER BEFORE CONTACTING YOUR ASSIGNED JUDGE.**
This case is assigned to the Superior Court Judge whose name appears in the caption of this case schedule.  The assigned Superior Court Judge will preside over and manage this case for all pretrial matters.

**COMPLEX LITIGATION:**  If you anticipate an unusually complex or lengthy trial, please notify the assigned court as soon as possible.

**APPLICABLE RULES:**  Except as specifically modified below, all the provisions of King County Local Civil Rules 4 through 26 shall apply to the processing of civil cases before Superior Court Judges.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**CASE SCHEDULE AND REQUIREMENTS:**  Deadlines are set by the case schedule, issued pursuant to Local Civil Rule 4.

**THE PARTIES ARE RESPONSIBLE FOR KNOWING AND COMPLYING WITH ALL DEADLINES IMPOSED BY THE COURT'S LOCAL CIVIL RULES.**

### A. Joint Confirmation regarding Trial Readiness Report
No later than twenty one (21) days before the trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report setting forth whether a jury demand has been filed, the expected duration of the trial, whether a settlement conference has been held, and special problems and needs (e.g., interpreters, equipment).

The Joint Confirmation Regarding Trial Readiness form is available at www.kingcounty.gov/courts/scforms. If parties wish to request a CR 16 conference, they must contact the assigned court.  Plaintiff's/petitioner's counsel is responsible for contacting the other parties regarding the report.

### B. Settlement/Mediation/ADR
a. Forty five (45) days before the trial date, counsel for plaintiff/petitioner shall submit a written settlement demand.  Ten (10) days after receiving plaintiff's/petitioner's written demand, counsel for defendant/respondent shall respond (with a counter offer, if appropriate).

b. Twenty eight (28) days before the trial date, a Settlement/Mediation/ADR conference shall have been held.  FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY RESULT IN SANCTIONS.

### C. Trial
Trial is scheduled for 9:00 a.m. on the date on the case schedule or as soon thereafter as convened by the court.  The Friday before trial, the parties should access the court's civil standby calendar on the King County Superior Court website www.kingcounty.gov/courts/superiorcourt to confirm the trial judge assignment.

## MOTIONS PROCEDURES

### A. Noting of Motions

**Dispositive Motions:**  All summary judgment or other dispositive motions will be heard with oral argument before the assigned judge.  The moving party must arrange with the hearing judge a date and time for the hearing, consistent with the court rules.  Local Civil Rule 7 and Local Civil Rule 56 govern procedures for summary judgment or other motions that dispose of the case in whole or in part.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Non-dispositive Motions:**  These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered.  All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements.

Rather than noting a time of day, the Note for Motion should state "Without Oral Argument."  Local Civil Rule 7 governs these motions, which include discovery motions.  The local civil rules can be found at www.kingcounty.gov/courts/clerk/rules/Civil.

**Motions in Family Law Cases not involving children:** Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge.  All other motions should be noted and heard on the Family Law Motions calendar.  Local Civil Rule 7 and King County Family Law Local Rules govern these procedures.  The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

**Emergency Motions:**  Under the court's local civil rules, emergency motions will usually be allowed only upon entry of an Order Shortening Time.  However, some emergency motions may be brought in the Ex Parte and Probate Department as expressly authorized by local rule.  In addition,  discovery disputes may be addressed by telephone call and without written motion, if the judge approves in advance.

**B.  Original Documents/Working Copies/ Filing of Documents:  All original documents must be filed with the Clerk's Office.**  Please see information on the Clerk's Office website at www.kingcounty.gov/courts/clerk regarding the requirement outlined in LGR 30 that attorneys must e-file documents in King County Superior Court.  The exceptions to the e-filing requirement are also available on the Clerk's Office website. The local rules can be found at www.kingcounty.gov/courts/clerk/rules.

The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge.  The assigned judge's working copies must be delivered to his/her courtroom or the Judges' mailroom.  Working copies of motions to be heard on the Family Law Motions Calendar should be filed with the Family Law Motions Coordinator.  Working copies can be submitted through the Clerk's office E-Filing application at www.kingcounty.gov/courts/clerk/documents/eWC.

**Service of documents:** Pursuant to Local General Rule 30(b)(4)(B), e-filed documents shall be electronically served through the e-Service feature within the Clerk's eFiling application.  Pre-registration to accept e-service is required.  E-Service generates a record of service document that can be e-filed.  Please see the Clerk's office website at www.kingcounty.gov/courts/clerk/documents/efiling regarding E-Service.

**Original Proposed Order:** Each of the parties must include an original proposed order granting requested relief with the working copy materials submitted on any motion.  **Do not file the original of the proposed order with the Clerk of the Court.**  Should any party desire a copy of the order as signed and filed by the judge, a pre-addressed, stamped envelope shall accompany the proposed order.  The court may distribute orders electronically.  Review the judge's website for information: www.kingcounty.gov/courts/SuperiorCourt/judges.

**Presentation of Orders for Signature:** All orders must be presented to the assigned judge or to the Ex Parte and Probate Department, in accordance with Local Civil Rules 40 and 40.1. Such orders, if presented to the Ex Parte and Probate Department, shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). If the assigned judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

**Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the  Ex Parte and Probate Department.**  Such orders shall be submitted through the E-Filing/Ex Parte via the Clerk application by the attorney(s) of record. E-filing is not required for self-represented parties (non-attorneys). Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department.  **If final order and/or formal proof are entered in the Ex Parte and Probate Department, counsel is responsible for providing the assigned judge with a copy.**

**C. Form**

Pursuant to Local Civil Rule 7(b)(5)(B), the initial motion and opposing memorandum shall not exceed 4,200 words and reply memoranda shall not exceed 1,750 words without authorization of the court. The word count includes all portions of the document, including headings and footnotes, except 1) the caption; 2) table of contents and/or authorities, if any; and 3): the signature block. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

***IT IS SO ORDERED.  FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS.  PLAINTIFF/PEITITONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.***

_____
PRESIDING JUDGE

# EXHIBIT E

ØŠÖÖ
GŒGͲ ĺΤ ŒŸÁͭëî
SŒ Ö ͦ ÕU WͶ V Ÿ
ÙWÚ ÖŰ Œ Ų Ů ÖU WŰ V Ö ŠŐUS

ÔŒŰ Ő ÁͩÅͩGͥ ÈŒëͤĵĺ ĴFͤͥ Å ÙŐŒ

## SUPERIOR COURT, STATE OF WASHINGTON, COUNTY OF KING

| | |
|---|---|
| ROB SANDS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff(s),<br><br>Vs.<br><br>AT&T, INC., a foreign corporation doing business in Washington State,<br><br>                              Defendant(s). | NO. 24-2-09591-8 SEA<br><br>DECLARATION OF SERVICE OF: SUMMONS (20 DAYS); CLASS ACTION COMPLAINT; ORDER SETTING CIVIL CASE SCHEDULE; CASE INFORMATION COVER SHEET AND AREA DESIGNATION. |

STATE OF WASHINGTON
COUNTY OF KING

     That I am now, and at all times herein mentioned, was a citizen of the United States and a resident of the State of Washington, over the age of 18 years, not a party to or interested in the above entitled action, and am competent to be a witness therein.

     That at 11:03 A.M. on May 1st, 2024, at 711 Capitol Way South, Suite 204, Olympia, Washington, I duly served the above-described documents in the above-described matter upon AT&T, Inc., by then and there personally delivering a true and correct copy thereof by leaving the same with James Roberts, Customer Service Representative for CT Corporation System, its Registered Agent.

     I declare under the penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

| | |
|---|---|
| Process Fee: | 12.00 |
| Prep: | 10.50 |
| Travel: | 90.00 |
| Bad Address: | |
| SSA: | |
| Wait: | |
| Special Fee: | |
| Declaration Fee: | 12.00 |

Signed at Seattle, Washington, on *MAY 3, 2024*

**TOTAL   $124.50**

*Glen A. Johnson*

GLEN A. JOHNSON    SNOHOMISH CO. # 2021-39

1
2
3
4
5
6
7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

8
9

ROB SANDS, individually and on behalf of all
others similarly situated,

No. 24-2-09591-8 SEA

SUMMONS (20 DAYS)

10

Plaintiff,

11

v.

12
13

AT&T, INC., a foreign corporation doing
business in Washington State

14

Defendant.

15
16

TO:    AT&T, INC.

17

A lawsuit has been started against you in the above entitled court by the above-captioned

18

plaintiff.  Plaintiff's claims are stated in the written complaint, a copy of which is served upon

19

you with this summons.

20

In order to defend against this lawsuit, you must respond by stating your defense in

21

writing, and serve a copy upon the person signing this summons within 20 days after the service

22

of this summons, excluding the day of service, or a default judgment may be entered against you

23

without notice.  A default judgment is one where the plaintiff is entitled to what he asks for

24

because you have not responded.  If you serve a notice of appearance on the undersigned person,

25

you are entitled to notice before a default judgment may be entered.

26

SUMMONS (20 DAYS) - 1

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

# EXHIBIT F

ØŠÖÖ

ŒŒ ÁT Œ ÁGI ÁFFÍ Í Á Œ T
SŒ Õ Á U W VÝ
Ù Ú Ü Œ Ü Á U W Ü Á ÕŠ Ü S
Ò Œ Š Ò Ö
Ô Œ Ü Ò Á Ä WÁGI ŒŒ Í JŸ FŒI Á Ü Œ

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| ROB SANDS, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>AT&T, INC., a foreign corporation doing business in Washington State<br><br>      Defendant. | No.  24-2-09591-8 SEA<br><br>ACCEPTANCE AND ADMISSION OF SERVICE OF THE SUMMONS AND CLASS ACTION COMPLAINT |

   I, Kyle T. Cutts, accept the service of the Summons and Class Action Complaint in the above-entitled action on behalf of my client, AT&T Inc., on May 21, 2024, at Cleveland, Cuyahoga County, Ohio.

   Service of process on May 21, 2024, is hereby admitted, without waiver of any other claims, assertions, objections, or defenses, other than sufficiency of service.

   Dated this 23rd day of May, 2024.

        /s/  *Kyle T. Cutts*     
        Kyle T. Cutts (admitted in California (Bar # 257641) and Ohio (Bar # 0091452), not Washington)
        **BakerHostetler**
        Key Tower
        127 Public Square, Suite 2000
        Cleveland, OH 44114
        Phone: (216) 861-7576
        Email: kcutts@bakerlaw.com

ACCEPTANCE AND ADMISSION OF SERVICE - 1

# EXHIBIT G

King County Superior Court Docket - 24-2-09591-8 SEA

| Sub Number | Date Filed | Document Name |
|---|---|---|
| ⊢ 1 | 04/30/2024 | CMPTTO - Complaint for Tort - Other |
| ⊢ 3 | 04/30/2024 | CICS - Case Information Cover Sheet |
| ⊢ 2 | 04/30/2024 | ORSCS-CV - Order Setting Case Schedule - Civil |
| ⊢ 4 | 04/30/2024 | SM - Summons |
| ⊢ 5 | 05/06/2024 | AFSRS - Affidavit / Declaration / Certificate Of Service - Served |
| ⊢ 6 | 05/24/2024 | ACSR - Acceptance of Service |